[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ACCELERATED
 OPINION
In this accelerated calendar case, appellant, Thomas Vliek, was ordered by the Lake County Child Support Enforcement Agency to pay $841.05 per month to support his son, Maxwell Ryan Myllykoski. He subsequently filed a complaint in the Lake County Court of Common Pleas, Juvenile Division, objecting to the amount of support set by the CSEA and requesting the court to establish a new amount. The matter was heard by a magistrate on June 26, 1997.
In his decision, the magistrate found, in pertinent part, that appellant and appellee, Kristina Myllykoski, were the natural parents of Maxwell, d.o.b. May 16, 1996. Appellant, although acknowledging paternity, has never exercised, and does not intend to exercise, any visitation rights. No previous court orders have been issued regarding support or visitation. Apparently, appellant never paid child support before the hearing.
The magistrate found that during the seven and one-half month period from the date of the child's birth to January 1, 1997, appellant worked as a new car salesman at Rick Case Honda. In 1996, appellant earned a total of $43,894. From January 1, 1997 to the date of the hearing, appellant worked for Gene Norris Honda. During the first five months of 1997, appellant earned $23,443.17. Apparently, he is compensated through a system of "base pay" plus commissions. The magistrate did not specify what part of the 1996 or the 1997 income was earned as "base pay" and what part was earned as commissions.
The magistrate found that appellee worked in 1996 as a substitute teacher and at Dillard's Department Store. She made a combined total of $15,044 that year. Appellee was seeking employment at the date of the hearing. Also, appellee incurs child care expenses in the amount of $500 per month, except in the three summer months, when her expenses are only $400 per month.
Since appellant never paid child support, the magistrate decided to calculate the amounts he owed appellee.[1] He divided the total into two periods. In the first period, the seven and one-half months from May 16, 1996 to December 31, 1996, the magistrate took appellant's gross income earned from Rick Case Honda, $43,894, and appellee's combined gross income earned from teaching and from working at Dillard's, $15,044, and placed these numbers into a child support worksheet. He calculated that, during this period, appellant should have paid $868.87 per month. Multiplying that figure by seven and one-half months, the magistrate concluded that appellant owed $6,516.52 up to December 31, 1996.
Next, the magistrate had to calculate appellant's obligation for the six month period from January 1, 1997 to June 26, 1997, the date of the hearing. But in 1997, appellant changed jobs, and was working at Gene Norris Honda. During the first five months of the year, appellant earned $23,443.17. The magistrate had no evidence as to what total amount appellant would earn by the end of 1997. He consequently had no amount to place into a child support worksheet and could not calculate the amount of child support appellant should pay for each month in 1997.
To solve the problem, appellant apparently argued that the magistrate should average his 1994, 1995, and 1996 income in order to estimate his 1997 income. The magistrate rejected that argument, reasoning that "commissions" are listed as a separate category of "gross income" under R.C. 3113.215(A)(2). The three year averaging provisions in R.C. 3113.215(B)(5)(d) are reserved for "overtime and bonuses". The magistrate thought that "commissions" were dissimilar to "bonuses," and concluded that R.C. 3113.215(B)(5)(d) did not apply.
Instead, the magistrate divided appellant's five-month income, $23,443.17, by five. That calculation yielded $4,688.63, or appellant's average gross monthly income for the first five months in 1997. The magistrate assumed that appellant would earn that same average amount for the other seven months of the year. He multiplied the monthly figure, $4,688.63, by twelve, and projected that, by the end of 1997, appellant would have earned a total of $56,263. The magistrate took that figure and appellee's combined 1996 income, $15,044 (although it appears that appellee was unemployed in 1997 and earned nothing), and placed these numbers into a second child support worksheet. That worksheet determined appellant owed $995.63 for each month in 1997.
Next, the magistrate decided to deviate from the 1997 monthly child support figure derived from the worksheet. He reasoned that the worksheet "presumes" that there would be a standard visitation order. In Lake County Juvenile Court, that standard order includes 60 days (or two months) per year with the non-resident spouse. During those two months, the non-resident parent is out of custody, and does not incur child support expenses. But here, appellant refused to exercise visitation rights. Appellee has custody all twelve months of the year; therefore, the magistrate reasoned, she is forced to pay two additional months of child rearing expenses as a result of appellant's recalcitrance. He multiplied appellee's regular child care expenses, $500 per month, by two months, to get $1,000. The magistrate added that $1,000 onto appellant's overall child support obligation for the year or, $83.33 per month. The magistrate consequently added $83.33 to appellant's 1997 worksheet monthly child support figure, $995.63, and concluded that appellant owed $1,078.96 per month for 1997.
The month of June was almost over on the date of the hearing; therefore, the magistrate took the monthly $1,078.96 figure, multiplied it by six, and calculated that appellant owed $6,473.76 through the end of June 1997.
Appellant's combined support payments for the seven and one-half month period in 1996, $6,516.52, and for the six month period in 1997, $6,473.76, totaled $12,990.28.
Although it is not clear from the magistrate's decision, it appears that appellant was ordered to continue to pay $1,078.96 in child support each month thereafter.
Appellant filed timely objections to the magistrate's decision with the juvenile court. Specifically, appellant objected, in pertinent part, to the magistrate's extrapolation of his 1997 income. He argued that there is no provision in the Child Support Guidelines for the extrapolation of income. He also argued that the magistrate's determination that appellant would earn $56,263 in 1997 was against the manifest weight of the evidence. He said the magistrate should have taken his "base pay" at Gene Norris Honda for 1997 and added it to the average of his last three years of commissions he earned at Rick Case Honda in order to estimate his 1997 earnings. Finally, appellant claimed the magistrate should have concluded that his child support obligation was only $689 per month. Appellant also specifically objected to the magistrate's decision to deviate upwards from the child support obligation, as calculated by the 1997 worksheet.
Although appellant ordered a transcript of the hearing before the magistrate, it was neither prepared nor filed with the trial court.
The trial court overruled appellant's objections. It ruled that "commissions" are not "bonuses" or "overtime," as the latter are within the discretion of the employer, and the former depend on the ability and energy of the employee and are thus within his control. The court also reasoned that it would be "ludicrous" to average commissions appellant earned with Rick Case Honda with the commissions he earned at Gene Norris Honda. As to the $1,000 deviation, the court found that, because appellant did not file a transcript of the evidence presented at the hearing, it was unable to examine the correctness of the magistrate's decision to hold appellant accountable for the economic ramifications for failing to exercise his visitation rights.[2]
Appellant filed a timely appeal, asserting two assignments of error.
 "[1.] The trial court erred as a matter of law to the prejudice of the appellant in approving the magistrate's determination of appellant's [1997] income by extrapolating through the end of the year based upon the income through May, 1997, when appellant's income is based on commissions from car sales.
 "[2.] The trial court erred as a matter of law to the prejudice of the appellant in approving the magistrate's determination to deviate upwards in the amount of child support."
Appellant claims in his first assignment of error that the magistrate and/or the trial court committed reversible error by extrapolating his 1997 income instead of averaging his 1994, 1995, and 1996 commissions. However, appellant has not provided this court with an adequate record upon which we can determine whether he was prejudiced by their actions. No transcript of the hearing was filed. Without more information, we cannot determine if appellant's child support obligation would have been any lower under his "averaging" method, as opposed to the magistrate's "extrapolation" method. It could be that appellant's child support obligation, as calculated under the averaging method, would be the same as, or greater than, what the magistrate assigned it to be. If that were the case, appellant was not harmed by the extrapolation method. The only way to substantiate his claim that the extrapolation method harmed him is to prove that appellant's child support obligation would be lower under the averaging method. Lacking a transcript of his evidence showing the figures for 1994, 1995, and 1996, he cannot do so.
Granted, appellant's counsel made certain assertions in his written objections to the trial court that his obligation under the averaging method would total $689 per month. But those bare assertions are not "evidence" upon which we may rely. Nat'l. CityBank v. American General Finance, Inc. (Mar. 11, 1994), Erie App. No. E-93-43, unreported, 1994 Ohio App. LEXIS 880 (unsupported statements in trial briefs could not be considered by appellate court).
The first assignment of error has no merit.
In the second assignment of error, appellant attacks the magistrate's decision to deviate from the amount of child support as calculated by the 1997 worksheet. He makes several arguments.
First, he argues that the magistrate's finding that appellant refuses to visit the child is not supported by the record but, since no transcript was filed, we must accept the magistrate's factual findings as true for the purposes of this appeal. Juv.R. 40(E)(3)(b); Donato v. Donato (June 26, 1998), Lake App. No. 96-L-224, unreported.
Second, appellant says there is no statutory basis for the proposition that the worksheet "presumes" a standard visitation order, so that deviation is necessary when there is no visitation. He argues that each court has its own conception as to what constitutes a "standard" order of visitation. Two months may be standard in Lake County, but another amount might be standard elsewhere. He also says that visitation for a newborn is highly irregular, so the magistrate could not "presume" the juvenile court would order a standard two months visitation if it had been asked to decide that issue.
These arguments have some merit. We agree that nothing in the structure of the Child Support Worksheet set forth in R.C.3113.215(E), or in the terms of R.C. 3113.215 "presume" a standard, two-month visitation order. In fact, the opposite is true. If the magistrate's "presumption" that the Worksheet accounted for two months of visitation were valid, then the trial court would be instructed in the Worksheet to divide the annual child support obligation by ten to arrive at the amount of support to be paid each month. The magistrate's rule would reflect only ten months of child support obligations (spread out over twelve payments), and two months off when the child spends time with the obligor spouse pursuant to a visitation order, during which the obligor spouse pays the child care expenses directly instead of to the residential parent. Line 28 of the Worksheet actually directs the court to divide the annual child support obligation of the payor spouse by twelve. In our view, that means the payor spouse owes his child support all twelve months of the year, and the Worksheet makes no implied allowances for a standard, two-month visitation order. See Pauly v. Pauly (1997), 80 Ohio St.3d 386
(holding that in a shared parenting context, neither spouse is automatically entitled to a credit for the time spent with the child.)
The $1,000 deviation per year can be justified on other grounds, however. R.C. 3113.215(B)(3) gives the trial court discretion to adjust the mandatory amount of child support as calculated by the Worksheet where the calculated amount would be "unjust or inappropriate" and not in the best interest of the child. Lakostik v. Lakostik (Aug. 2, 1996), Geauga App. No. 95-G-1956, unreported. Like all exercises of discretion in child support matters generally, the decision to deviate from the calculated amounts will not be disturbed on appeal absent an abuse of that discretion. Wakefield v. Woods (Oct. 8, 1998), Cuyahoga App. No. 73435, unreported, 1998 Ohio App. LEXIS 4807. Abuse of discretion connotes more than a mere error of law or mistake in judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
R.C. 3113.215(B)(3) gives a list of factors that the court may consider when deciding whether to deviate from the calculated support obligation, including:
(a) the special needs of the child;
 (d) any extraordinary costs associated with visitation;
(m) the emotional condition of the child;
 (o) the moral and legal responsibilities of the obligor parent to support others; and
(p) any other relevant factor.
Appellant has decided that he would rather not be young Maxwell's father. His decision carries with it grave emotional consequences for the boy, who will be forced to grow up without a positive male role-model. His decision also bears economic consequences for appellee, who will be forced to shoulder more of the child-rearing expenses because appellant is unwilling to take the child from time to time. Furthermore, appellant has moral obligations to take personal responsibility for his actions and to help raise his son, duties which he apparently intends to shirk. The magistrate and the lower court in this case considered these points and collectively decided it would be in the child's best interest to increase appellant's child support payment. We cannot hold the court acted unreasonably or unconscionably.
Third, appellant argues that the magistrate should have used the $400 figure appellee gave for her child care expenses during the summer months, instead of the $500 figure she gave for expenses for the rest of the year. Appellant's decision to stay out of Maxwell's life effects both mother and child every month. There are more months in which appellee incurs $500 in child-related expenses. Therefore, it was not unreasonable for the court to use the $500 figure when estimating the yearly economic impact of appellant's behavior.
The second assignment of error has no merit.
 The judgment is affirmed. _______________________ JUDGE ROBERT A. NADER
FORD, P.J.,
O'NEILL, J., concur.
[1] Under R.C. 3111.13(F)(3), a juvenile court may order a parent to pay support that should have been paid prior to the date of the support order.
[2] There appears to be a mathematical or typographical error in the judgment entry. If the court accepted the magistrate's recommendation that appellant should pay $1,078.96, from January 1, 1997 until further order of the court, that averages to be $269.74 per week in a standard four-week month. The judge ordered appellant to actually pay $229.76 per week, which equates to only $919.04 per month. We cannot determine how the court arrived at the $229.76 figure. Counsel for appellee should look into this matter.